UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————x

UNITED STATES OF AMERICA,

    -against-

                                22 CR 82-06 (CM)

TIRAN BRANCH,

                Defendant.
————————————————————————————x

## DECISION AND ORDER DENYING DEFEDNANT'S MOTION TO WITHDRAW GUILTY PLEA

McMahon, J.:

On May 18, 2023, Tiran Branch pleaded guilty before Magistrate Judge James L. Cott, pursuant to a plea agreement, to one count of narcotics conspiracy, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C). This Court adopted that plea on June 12, 2023.

On November 8, 2023 — almost six months after his guilty plea — Branch moved to withdraw his plea. Branch claims that he is innocent and that his former attorney scared him and improperly influenced his decision to admit participation in the charged conspiracy. (Affidavit of Tiran Branch, "Aff.," Dkt. 259-1).

The Government argues that Branch's motion should be denied because his claims are contradicted by his sworn statements during his plea hearing, and because he has not otherwise carried his burden of demonstrating a "fair and just reason" to withdraw his guilty plea, under Fed. R. Crim. P. 11(d)(2)(B).

For substantially the reasons stated in the Government's opposition papers, defendant's motion to withdraw his plea is denied.

Background

The charges in this case stem from the defendants' participation in a drug trafficking organization called the "Downtown Mafia" ("DTM"), which was a group of kilogram-quantity cocaine traffickers, and their subordinates, operating primarily in the vicinity of King Towers in Harlem. (PSR ¶ 16). Between in or about February 2021 and in or about February 2022, members of DTM sold approximately 1.22 kilograms of cocaine and approximately 47.598 grams of crack cocaine to a confidential source and undercover law enforcement officers engaged in the investigation of the DTM. (PSR ¶ 17).

Branch's role in the DTM was to sell cocaine, crack cocaine, and marijuana, principally with co-defendants Kasien Adderley and Quincy Hillard. (PSR ¶ 19). Branch regularly communicated with Adderley and Quincy Hilliard by phone and with Quincy Hilliard by Instagram. (PSR ¶ 19). For example, on or about March 19, 2020, Branch spoke with Quincy Hilliard about someone getting "1" and giving Branch "only 10," which referred to exchanging one kilogram of narcotics for "only" $10,000. (PSR ¶ 19). On other occasions in 2020, Branch received inquiries from customers via text messages about "soft" (*i.e.*, powder cocaine), and numbers (*i.e.*, prices). (PSR ¶ 19). In these customer communications, Branch cited numbers including "33" "32, "37" and "40," which were consistent with the ranges for the prices (in the thousands of dollars) for a kilogram of cocaine during the COVID-19 pandemic. (PSR ¶ 19).

Law enforcement also obtained evidence of Branch's participation in the conspiracy from his cellphone, which contained a hidden application, disguised as a calculator. (PSR ¶ 20). The hidden calculator application contained *inter alia* photographs showing: a large quantity of semi-processed crack cocaine sitting on a stove; a Jimenez Arms 9mm semiautomatic pistol, debit cards in Branch's name; and a Rolex watch. (PSR ¶ 20).

2

Legal Standard

A guilty plea is a "grave and solemn act," not to be entered or withdrawn lightly. *United States v. Hyde*, 520 U.S. 670, 677 (1997). Allowing a defendant to "withdraw his guilty plea simply on a lark" serves to "debase[] the judicial proceeding at which a defendant pleads and the court accepts his plea" and "degrade the otherwise serious act of pleading guilty into something akin to a move in a game of chess." *Id.* at 676–77. "The standard for withdrawing a guilty plea is stringent because society has a strong interest in the finality of guilty pleas," and "allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice." *United States v. Rose*, 891 F.3d 82, 85 (2d Cir. 2018). Accordingly, prior to sentencing, a defendant may only withdraw a guilty plea if he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B).

The defendant "has the burden of demonstrating valid grounds for withdrawal," and whether to permit a defendant to withdraw a guilty plea is committed to the discretion of the district court. *United States v. Gonzalez*, 647 F.3d 41, 56 (2d Cir. 2011). In determining whether the defendant has met his burden of providing a "fair and just reason" for withdrawing a guilty plea, courts in the Second Circuit consider the following factors:

> (1) whether the defendant has asserted his or her legal innocence in the motion to withdraw the guilty plea; (2) the amount of time that has elapsed between the plea and the motion (the longer the elapsed time, the less likely withdrawal would be fair and just); and (3) whether the government would be prejudiced by a withdrawal of the plea.

*Rose*, 891 F.3d at 85. Courts "may also look to whether the defendant has raised a significant question about the voluntariness of the original plea." *United States v. Rivernider*, 828 F.3d 91, 104 (2d Cir. 2016).

3

With respect to the first factor, "[s]olemn declarations in open court" during a plea allocution "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Thus, "a defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997).  With respect to the second factor, "a long interval between the plea and the request often weakens any claim that the plea was entered in confusion or under false pretenses." *United States v. Doyle*, 981 F.2d 591, 595 (1st Cir. 1992). Finally, "prejudice" in the context of plea withdrawal "typically refers to depriving the Government of the benefit of its bargain by having the burden of trial preparation suddenly thrust upon it, as well as the potential difficulty to the Government in securing evidence against the defendant that would have been easier to secure at an earlier moment in time." *United States v. Lopez*, 385 F.3d 245, 254 (2d Cir. 2004).

A defendant's motion to withdraw a guilty plea may be summarily denied "where the defendant's allegations merely contradict the record, are inherently incredible, or are simply conclusory." *Torres*, 129 F.3d at 715. "The fact that a defendant has a change of heart prompted by his reevaluation of either the Government's case against him or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea." *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir. 1992).

Defendant's Motion

In his motion to withdraw his guilty plea, Branch argues that he has "made a claim of innocence" and "raised a significant question about the voluntariness of the original plea." (Mem. at 5).  But neither his bald claim of innocence nor his new dissatisfaction with his attorney's advice—assertions that are contradicted by his sworn plea colloquy — constitutes a

4

"fair and just" reason to withdraw his plea. None of the relevant factors (*i.e.*, legal innocence, the amount of time that has passed, prejudice to the Government, and voluntariness of the plea) supports withdrawal of Branch's guilty plea in this case.

Branch's claim of innocence is not only unsupported by any evidence but is flatly contradicted by his sworn statements at his plea allocution. (*See* Tr. 14 (affirming that Branch did "in fact, commit the lesser included offense"); Tr. 16–17 (allocuting to his participation in the cocaine trafficking conspiracy); Tr. 17 (affirming that he "really did the things [he] just read"); Tr. 17 (affirming that he was "pleading guilty because [he was] guilty")). "It is well established that a criminal defendant's self- inculpatory statements made under oath at this plea allocution carry a strong presumption of verity and are generally treated as conclusive in the face of the defendant's later attempt to contradict them." *United States v. Grzybek*, 283 F. App'x 843, 845 (2d Cir. 2008). "This Circuit has consistently affirmed denials of motions to withdraw guilty pleas when the defendant's allegations are directly contradicted by his clear statements at allocution." *United States v. Bonilla*, 17 F. App'x 11, 13 (2d Cir. 2000) (affirming denial of motion to withdraw guilty plea premised on claims that the defendant was "innocent, that his attorney coerced him, and that he did not receive and did not understand the government's evidence").

Branch's "assertion of his innocence is [also] undercut by its timing, coming nearly seven months after the plea." *Gonzalez*, 970 F.2d at 1100. "Whereas a swift change of heart may indicate a plea made in haste or confusion, the fact that the defendant waited five months to file his motion strongly supports the district court's finding that his plea was entered voluntarily." *United States v. Doe*, 537 F.3d 204, 213 (2d Cir. 2008). *See, e.g.*, *United States v. Bical*, 819 F. App'x 26, 29 (2d Cir. 2020) (affirming denial of motion to withdraw guilty plea where "over

two months passed between the guilty plea and the motion").

And while "the government need not demonstrate prejudice where the defendant fails to show sufficient grounds to justify withdrawal of the plea," *Torres*, 129 F.3d at 715, the Government would be prejudiced here since it consented to the sentencing of its cooperating witness—who had been in pretrial detention—after the last defendant (Branch) in the case pleaded guilty. While the Government may be able to locate and secure the witness's appearance at trial, it can no longer do so with the certainty of when that cooperating witness was detained.

In regard to Branch's complaints about the legal advice of his attorney, nothing in counsel's purported bad advice calls into question the voluntariness of Branch's plea. Branch argues that he was "intimidate[ed]" and "coerc[ed]" by his attorney's advice about the likely consequences of a trial, the Government's access to a cooperating witness, and Branch's additional sentencing exposure in connection with the gun pictured in his hidden calculator application. (Mem. at 3). But this is sound legal advice, not coercion. As the Second Circuit has explained, it is "commonplace that a defendant will feel 'coerced' in the lay sense of the word by an attorney's recommendation to plead guilty rather than proceed to trial. Such recommendations often come with predictions of almost inevitable conviction at trial followed by a long jail sentence. A feeling of duress is hardly an unusual outcome of such deliberations." *United States v. Juncal*, 245 F.3d 166, 174 (2d Cir. 2001). Indeed, Branch's attorney was duty-bound to inform Branch "of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000).

Branch also claims that his former attorney led him to believe "he was likely to receive

a sentence of probation" and that "his felony conviction would have no impact on his

employment or his New York State HazMat license." (Mem. at 3). Any suggestion that Branch

would receive a non-incarceratory sentence is irreconcilable with the plea agreement, which

specified a Guidelines range of 63 to 78 months' imprisonment, (Plea Agreement at 3), and

with Branch's sworn statements at his plea allocution that he had reviewed the plea agreement,

(Tr. 11–12), that he understood this Court could sentence him to any term of imprisonment up to

20 years, (Tr. 11), and that he would be bound by his guilty plea even if he was surprised or

disappointed by his sentence, (Tr. 11). Branch's unsupported claim that his attorney promised

there would be no impact on his employment is "inherently incredible," *Torres*, 129 F.3d at

715, given any term of imprisonment would remove Branch from his employment for some

length of time. And Branch could not have seriously thought that he would simply resume use

of his HazMat license after sentencing, given his exposure to two decades of imprisonment and

the readily available information on the New York Department of Motor Vehicles ("DMV")

website that "[d]istribution of, intent to distribute, possession, or importation of a controlled

substance" is a disqualifying crime. In all events, Branch's attorney was not required to advise

him at all about collateral consequences such as "the revocation of a driver's license." *Farhane*

*v. United States*, 77 F.4th 123, 132 (2d Cir. 2023).

Finally, Branch's claims that his guilty plea was "involuntary" and the product of

"intimidation, false promises and coercion by his attorney," (Mem. at 1), are plainly

contradicted by his sworn plea allocution. Branch affirmed to Judge Cott that no "force or . . .

threats of force [had] been used, either directly or indirectly, to influence" his plea, (Tr. 11), and

that his plea was "voluntary," that is, "made of [his] own free will," (Tr. 14). Branch even

enthused that he was "[e]xtremely" satisfied with his attorney. (Tr. 5). These statements "carry

a strong presumption of verity," and this Court has "no reason to discount them in favor of [the defendant's] subsequent unsupported allegations." *United States v. Freeman*, 17 F.4th 255, 265 (2d Cir. 2021); *see also United States v. Perkins*, 229 F.3d 1136 (2d Cir. 2000) (in light of defendant's plea allocution, defendant's "later self-serving statements . . . do not satisfy his burden to raise a significant question concerning the voluntariness or general validity of his pleas").

Accordingly, Branch has not met his burden of demonstrating a "fair and just reason" to withdraw his guilty plea. The motion is denied. Branch will be sentenced January 11, 2024, at 2:00 p.m.

This constitutes the decision and order of the Court.

December 12, 2023

Colleen McMahon
United States District Court Judge

8